## Commonwealth *v.* Bozzi, Appellant.

Argued March 30, 1951. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and GUNTHER, JJ. (DITHRICH, J., absent).

*Jacob Kossman,* for appellant.

*Maurice W. Sporkin,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY HIRT, J., July 19, 1951:

The defendant was convicted on bill 168, charging the unlawful possession and sale of heroin, a derivative of opium, in violation of the Act of July 11, 1917, P.L. 758, as amended, 35 PS §851 et seq., and was sentenced. He is here seeking a new trial. We are not concerned with his convictions by the same jury of similar charges on seven other bills.

At the trial, in support of the charges, there was direct and positive evidence that the defendant sold five capsules to one John Belko, a known drug addict, on July 13, 1950, for $10. The sale was observed by detective Regler who was in hiding nearby. Both Belko and Regler testified to the sale. Each of the five capsules, according to the testimony of the chemist to whom they were delivered for analysis, contained 1.3 grains of a mixture of heroin hydrochloride and milk sugar. The chemist testified that the milk sugar was added to give the heroin the bulk necessary for manipulation by a user. He described the mixture in the capsules as the "general article of commerce" used by dope addicts.

Drugs, the possession and sale of which are prohibited by the Act, include all derivatives of opium but, under §2 of the Act as amended, 35 PS §852, exclude compounds, among others, which do not contain more than one-eighth of a grain of heroin, if a solid as here, in one avoirdupois ounce. The question was

not raised below and it is now contended for the first time that since the evidence is not specific that the capsules contained heroin in a mixture in excess of the above proportion per ounce, the conviction of defendant must be set aside for want of proof that he possessed and sold heroin in violation of the Act. There is no merit in this contention under the circumstances. In the supplemental record, which defendant neglected to print, there is an admission, read into the record at the outset of the trial of this case, that this defendant has "no right to be in possession of or sell or dispose of or dispense the drug or drugs which will now be discussed by the witnesses" if it be found that he did possess or sell them. This is an admission, and was so intended by the Commonwealth and the defendant, of a heroin content in the mixture in the 5 capsules here involved, in excess of that allowed by law, which could be legally possessed and sold only by druggists or other qualified dispensers. And if the defendant possessed and sold the heroin, as the jury found, he on the above admission is guilty of violations of the Act.

The above consideration has a bearing also on defendant's complaint that the court in its charge did not define the crimes charged in the indictment. The trial judge did explain the charges and instructed the jury as to the nature of the offenses but without specific reference to the provisions of the Act. On the admission of an unlawful heroin content in this case, the offenses of possession and sale became self-defining. And in the light of defendant's admission the charge substantially covered the issues involved. It is only where the issues are not clear that the failure of the court to define the offense constitutes fundamental error. *Commonwealth v. McDermott*, 152 Pa. Superior Ct. 208, 31 A. 2d 601. In any view since the defendant through his counsel did not request further instructions he cannot now complain of inadequacy in defini-

tion of the crimes, in the absence of a showing that the alleged omissions contributed to the jury's verdict. *Commonwealth v. Bruno,* 316 Pa. 394, 175 A. 518. Defendant did not raise the question at the trial of this case either by requesting additional instructions or by exception to the charge and he therefore cannot raise the question here. *Commonwealth v. Mehlman,* 163 Pa. Superior Ct. 534, 63 A. 2d 400; *Commonwealth v. Ricci,* 161 Pa. Superior Ct. 193, 54 A. 2d 51.

The charge was not argumentative and prejudicial as the defendant now, also for the first time, contends. He did not except specifically to any of the court's instructions on that ground nor take a general exception to the charge as a whole. While a defendant in the absence of exceptions may nevertheless complain of errors in the charge of the court which are fundamental (*Commonwealth v. Lehman,* 166 Pa. Superior Ct. 181, 70 A. 2d 404; *Commonwealth v. Ricci,* supra) yet even the isolated excerpts quoted by defendant do not tend to support his contention of basic error. On the contrary we think the trial judge in this case exercised extreme patience and forebearance. His charge was thorough and impartial. In addition to a clear discussion of the principles of law involved and an accurate review of all of the testimony, both on behalf of the defendant and the Commonwealth, he again and again instructed the jury that the facts and the inferences to be drawn from them were exclusively for them. Insofar as the trial judge raised the question of the implications of some phases of the testimony, his comments were judicial and within proper bounds. Our decisions recognize that the trial judge may comment on the evidence with propriety and even express an opinion based upon the testimony, provided he leaves the ultimate decision of the issues to the jury. *Commonwealth v. Simmons,* 361 Pa. 391, 407, 65 A.

2d 353; *Commonwealth v. Syren,* 150 Pa. Superior Ct. 32, 44, 27 A. 2d 504; *Commonwealth v. Kelly,* 134 Pa. Superior Ct. 241, 246, 4 A. 2d 209. As to that, this excerpt reflects the tenor of the charge as a whole. The trial judge said to the jury: "I want to say at this time that in all my comments you still retain your independence of judgment. I am only pointing out things that I think you should have in mind when you go out to weigh the matter and to exercise your independent judgment."

Defendant questions, again without exception, the charge of the court on the defense of an alibi. He testified that he was in his home at the time of the alleged commission of the offenses. As to proof of an alibi his testimony stands alone; he did not call one witness in corroboration although he said there were a "dozen" who would support his testimony. Nevertheless the trial judge, out of consideration for the rights of the defendant, charged: "There was a further factor brought out, namely, alibi. . . . Bozzi testified that on a certain day he did not leave his store. Evidence of that kind is in the nature of an alibi, because, of course, we know that if a man is at some place over there he cannot, at the same time, be committing a crime here. But the burden of proving an alibi rests upon the defendant who asserts it. There is no burden on the Commonwealth in connection with that. Of course, if they establish it by a preponderance of evidence, then there would be a burden on the Commonwealth to rebut it, but I shall discuss a little further the evidence as to alibi. If it is strong enough, and all-inclusive enough, it might be sufficient in itself to convince you that the man wasn't at the place and therefore did not commit the crime. Even where it is not so strong as that, nevertheless, along with other evidence, it might be sufficient to raise a reasonable doubt. In such event, you must give the benefit of that

reasonable doubt to the defendant." The defendant has no just complaint as to this instruction.

The defendant did specifically except to the charge of the court in two respects, viz: the instructions as to the character testimony on behalf of the defendant and, the testimony of bad reputation of Belko for truth and veracity. The defendant produced four of his customers, who dealt with him at his grocery store and his family doctor, all of whom testified that his reputation was good. As to the effect of this testimony the trial court properly charged the jury: "In this case there is also the factor of character evidence. Character evidence is really evidence of good reputation. The law says that if it is strong enough in itself it is substantive proof on behalf of a defendant [which] may, of itself, be sufficient to justify a verdict of acquittal. Even if it doesn't, it might be sufficient, along with other evidence, to raise a reasonable doubt." The evidence of good reputation in this case clearly was not impressive and under the circumstances the trial judge was justified in this additional comment: "But you have a right to consider the people who came in here and gave that character evidence. You saw them upon the witness stand and you saw what kind of witnesses they were. You have a right to consider whether a customer, for example, going into a grocery store to buy provisions, would know anything about the owner's reputation for conducting a business in narcotics. That is something you have a right to take into consideration." The trial judge properly raised the question; he left the answer entirely with the jury.

Appellant does not now question the charge as to the effect of the testimony of Belko's reputation for truth and veracity. But he now contends that the court improperly restricted his cross-examination of Belko which if allowed would have discredited him. The

opinion of President Judge OLIVER who was also the trial judge, completely refutes this contention, thus: "The bill under which defendant Bozzi was sentenced was supported not only by the testimony of Belko but also by the testimony of Lt. Linehauser and detective Regler. However, it is only as to Belko that defendant claims his right of cross-examination was curtailed. Belko was arrested as a user on July 10 but the evidence showed that the police surgeon examined him at that time and pronounced him *negative*. Any intimation that, under such circumstances, Belko had an interest in testifying falsely against Bozzi is utterly unfounded. Under cross-examination Belko testified freely that he was a self-confessed user of narcotics and that he had been arrested and convicted 21 times. Although the district attorney objected to the last question, he made no motion to strike out the answer. There it is in the record and it is difficult to understand why appellant in his brief prints the question and omits the answer. Counsel for defendant asked the question 'And you are awaiting a deferred sentence for the use and sale of narcotics?' [This was not a correct statement; he was awaiting trial and merely as an alleged user of narcotics]. The question was objected to. However, a moment later the district attorney said, 'I will withdraw my objection.' And the court said to defense counsel, 'Go ahead', *but defense counsel did not go ahead.* Instead he abandoned that line of examination and asked an entirely different question. The assertion that the cross-examination of Belko was improperly restricted is entirely without merit."

The testimony was more than sufficient to sustain the verdict, and we are unable to find error in this record; this appellant had a fair trial.

Judgment and sentence affirmed and it is ordered that the defendant appear in the court below at such

time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal was made a supersedeas.