## Beard *v.* Mossman, Appellant.

Argued December 12, 1940.

Before KELLER, P. J. CUNNINGHAM, BALD-RIGE, STADTFELD, RHODES and HIRT, JJ.

*Frederick B. Smillie,* of *Smillie & Bean,* for appellant.

*Robert Trucksess,* for appellee.

OPINION BY HIRT, J., May 2, 1941:

To say of a man that he *stole a dog* was not actionable, *Findlay v. Bear,* 8 S. & R. 570, but at least as

early as that case, one might have his civil remedies. Accordingly, while it would be easier to admit that a capable bird dog is subject matter enough for a law suit, by analogy it must be conceded that even a hound dog may have his day in court. This action in replevin has to do with the identity of a coon dog. Following plaintiff's recovery, a new trial was refused and judgment was entered on the verdict. Defendant's appeal questions the weight of the evidence and the sufficiency of the charge on the subject of identity. Both parties have what the witnesses refer to as "the coon hunting fever" and this case is of importance to them far beyond the mere money value of the dog.

If the dog in the possession of defendant is the dog "Jerry", plaintiff is entitled to recover; if it is in fact the dog "Skeeter" it is in the hands of its rightful owner.

Plaintiff bought Jerry from a breeder in Kentucky through the secretary of a local coon hunting club of which he was a member. The dog was received by him upon arrival shortly after November 18, 1935. He took it to his home and a few days later on the eve of Thanksgiving Day went hunting in the woods near Mantenel Village, Chester County. With him were his brother and his daughter. After an hour's hunt without "hitting a trail" the dog disappeared over a hill and was not seen again. The dog had not been with plaintiff long enough to become attached to him and it is not uncharacteristic of a hound to wander off for miles in search of a trail or in following a cold scent and at the end find a comfortable resting place or a new home nearby. Plaintiff's testimony emphasizes the danger of losing a hound in the woods when the dog is on unfamiliar ground. On this occasion there was another group of hunters from the neighborhood of Rebel Hill, in the woods, and three weeks later plaintiff suspected that one of them might have stolen his dog but there is

no evidence of it. The only conclusion from the evidence is that the dog was lost and not stolen.

Defendant bought a coon dog from H. H. MacIntyre of Gulph Mills in December 1937. According to the evidence the dog was bred in Mississippi and was sold by an owner in New Orleans to D. E. Ward of Lewisberry who in turn sold it to one Moody of Gulph Mills from whom MacIntyre acquired it in 1937. Defendant's title to a dog named "Skeeter" stands unimpeached and he maintains that the dog in question is that dog. He is supported in that contention by the testimony of former owners. In addition, defendant's exclusive possession of the dog for about one year is presumptive evidence of ownership.

In December 1935 plaintiff in advertising his loss in newspapers, described his dog as follows: "Lost—large black and tan male coon hound, small scar on middle of head." In September 1938 plaintiff heard that defendant had a coon dog for sale and went to his home in Rebel Hill and after inspecting the dog in question concluded that it was the dog Jerry which he had lost almost three years before. He then brought this action.

On the trial, plaintiff and his witnesses, in addition to referring to general characteristics common to dogs of this type, testified to blue ticks and white markings between the toes as the identifying markings. Plaintiff's brother said he had examined the dog on arrival and "checked it" so as to be able to recognize it if lost. He referred to white on the chest and blue ticks between the toes of the front feet. The witness Smith testified that he also checked the dog and remembered some color between his front toes. These witnesses also referred to a scar on the dog's head though their recollection differed as to its exact location. A tapering tail was said to be another identifying characteristic.

In the opinion refusing a new trial, the trial judge said of the evidence: "Frankly the trial judge would not have been surprised if the jury had rendered a verdict

in favor of the defendant and similarly he was not surprised when a verdict was rendered for the plaintiff." This is the equivalent of saying that, in the opinion of the trial judge, who heard and saw the witnesses, plaintiff's evidence did not have preponderating weight; for that reason a new trial well might have been awarded in the exercise of a general discretion. There are circumstances which cast the shadow of doubt on plaintiff's case. In advertising his loss plaintiff described a typical coon dog with a scar on its head as the only identifying mark. At the time of trial there was no scar on the dog in question. Plaintiff's explanation is that it was really a wound from rubbing against the shipping crate and not a scar, and that the hair had grown in, obliterating the mark. Except for the scar the advertisement described a type without distinguishing an individual and no reference was made to the blue tick markings or other characteristics relied on at the trial to identify his dog. His witnesses also referred to plaintiff's dog as a "typical black and tan" and plaintiff's brother though he was familiar with other dogs then owned by plaintiff was unable to describe any of them in other than general terms.

"There are few more difficult subjects with which the administration of justice has to deal" than that of identification. *Bryant's Estate, Bryant's Appeal,* 176 Pa. 309, 35 A. 571. Making due allowance for the difference in the degree of the proof required, the principles of our criminal cases, where the question most frequently arises, have some application and in submitting testimony of identity to a jury in a civil case, a definite responsibility rests upon the trial judge and the failure to instruct the jury as to how testimony of identity is to be considered and their proper approach to it, is error. It is said in *Com. v. House,* 223 Pa. 487,

72 A. 804: "No class of testimony is more uncertain and less to be relied upon than that as to identity and, where great doubt is cast upon it by the witnesses themselves, there is a double reason for submitting it with great caution." The jury in this case would have been justified in concluding that the testimony of plaintiff's witnesses did not rise above the expression of mere opinion or belief and if so, their testimony should have been weighed according to the rule applying to opinion evidence generally. Cf. *Com. v. Sharpe,* 138 Pa. Superior Ct. 156, 10 A. 2d 120. Moreover, all of plaintiff's testimony suggests the probability that his witnesses, through an excess of zeal, testified from what they observed in examining defendant's dog at or about the time of trial rather than from their three-year-old recollection. "Identification is necessarily a matter of inference, and the probative weight to be accorded to the testimony of witnesses who speak as to this point, is exclusively for the jury, to be judged by them in the light of the evidence in the case, and especially in the light of the facts upon which the inference is based." A charge of the court with respect to this determining inquiry must include an adequate presentation of the law, and the evidence in relation to its applicable principles. *Com. v. Ronello,* 242 Pa. 381, 89 A. 553. We are of the opinion that the charge of the court in this case was inadequate in these respects.

Judgment reversed with a venire.